**PRESBYTERIAN/ST. LUKE'S MEDICAL CENTER, Petitioner-Appellant,**

**v.**

**NATIONAL LABOR RELATIONS BOARD, Respondent-Appellee.**

**and**

**St. Luke's Federation of Nurses and Health Professionals, Intervenor.**

No. 80–1426.

United States Court of Appeals, Tenth Circuit.

July 8, 1981.

**452**

Clifton L. Elliott and Gina Kaiser of Roan & Grossman, Kansas City, Mo., for petitioner-appellant.

Linda Dreeben, Atty., N. L. R. B., Washington, D.C. (William A. Lubbers, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Robert E. Allen, Acting Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, and John H. Ferguson, Atty., Washington, D.C., with her on the brief), for respondent-appellee.

Michael Radzilowsky, Chicago, Ill. (Lawrence A. Poltrock and Stephen G. Daday, Chicago, Ill., with him on the brief), of DeJong, Poltrock & Giampietro, Chicago, Ill., for intervenor.

K. Bruce Stickler and Arthur E. Beck of Wood, Lucksinger & Epstein, Chicago, Ill., filed an amicus curiae brief for American Hospital Association.

Before BARRETT and LOGAN, Circuit Judges, and O'CONNOR, District Judge.[*]

BARRETT, Circuit Judge.

Presbyterian/St. Luke's Medical Center seeks review of an unreported order of the National Labor Relations Board requiring it to bargain with the St. Luke's Federation of Nurses and Health Professionals AFT, CFT, AFL–CIO. The Board cross-petitions for enforcement of the order.

Presbyterian/St. Luke's Medical Center is a three hospital system located in Denver, Colorado. The Center grew out of a July, 1979, merger between St. Luke's Hospital Association and the Presbyterian Medical Center. Prior to the merger, St. Luke's Hospital Association operated a single facility—St. Luke's hospital. The Presbyterian Medical Center operated two institutions— one hospital located ten blocks from the St. Luke's facility, and a second acute-care institution twelve miles away in Aurora, Colorado. *See The Presbyterian Medical Center,* 218 N.L.R.B. No. 192 (1975).

In October, 1979, the Union filed with the Board a petition for certification as the bargaining representative of the registered nurses employed at the St. Luke's facility of the Medical Center. The Medical Center contested the petition challenging the appropriateness of the bargaining unit. The unit is limited to registered nurses at the St. Luke facility only, rather than all professionals, other than physicians, at all three hospitals. The Medical Center's position was tied to Congress' directive that the Board avoid unnecessary proliferation of bargaining units in non-profit health care facilities.

Following five days of hearings, the Board's regional director found that a separate unit of registered nurses at the St. Luke's facility was appropriate for collective bargaining purposes. The Medical Center's request for Board review was denied in January, 1980. Thereafter, a majority of the employees in the unit selected the Union as their representative. On January 24, 1980, the Board certified the Union as the exclusive collective bargaining representative for all registered nurses at St. Luke's Hospital.[1]

When the Medical Center subsequently refused to bargain with the Union, unfair labor practice charges were filed. Violations of § 8(a)(1) and 8(a)(5) of the National

---

[*] Of the United States District Court for the District of Kansas, sitting by designation.

1. The bargaining unit certified consists of:
   INCLUDED: All full-time and regular part-time registered nurses, including in-service education nurses, cardiovascular specialists, diabetic stroke technicians, hyper-elementation nurse clinician, float pool nurses, certified anesthetists, and all other registered nursing employees at the St. Luke's facility of the employer located at 601 E. 19th Avenue in Denver, Colorado
   EXCLUDED: Unit supervisors, assistant unit supervisors, department directors, assistant department directors, patient representatives and other supervisory and managerial employees, and guards as defined in the Act and all other employees of the above facility.

Labor Relations Act, 29 U.S.C.A. § 158(a)(1), (5), were alleged. In answer to the charges, the Medical Center admitted the refusal to bargain, defending instead on the inappropriateness of the unit. The Board overruled the Medical Center objections and ordered the Medical Center to bargain with the Union on request, as well as to post notices to that effect.

The sole issue on appeal is whether the Board erred in holding that the Medical Center committed an unfair labor practice by refusing to bargain with the St. Luke's Federation of Nurses and Health Professionals AFT, CFT, AFL–CIO.[2]

### The Appropriateness of the Bargaining Unit

For nearly thirty years, non-profit health care institutions were excluded from the operation of the National Labor Relations Act, *supra*. In 1974, Congress amended the Act extending coverage to large numbers of employees in the industry. *See generally*, Vernon, *Labor Relations in the Health Care Field under the 1974 Amendments to the National Labor Relations Act*, 70 NW.U.L. Rev. 202 (1975). The elimination of this exemption "reflected Congress' judgment that hospital care would be improved by extending the protection of the Act to non-profit health care employees." *Beth Israel Hospital v. N.L.R.B.*, 437 U.S. 483, 497, 98 S.Ct. 2463, 2471, 57 L.Ed.2d 370 (1978).

One area of concern encompassed by the legislation dealt with disputes over bargaining units. Unable to agree on specific legislation, the House and Senate committees considering the amendment chose to address the problem in their respective reports. Each committee wrote:

> Due consideration should be given by the Board to preventing proliferation of bargaining units in the health care industry. In this connection, the Committee notes with approval the recent Board decisions in *Four Seasons Nursing Center*, 208 NLRB No. 50, 85 LRRM 1093 (1974), and

*Woodland Park Hospital*, 205 NLRB No. 144, 84 LRRM 1075 (1973), as well as the trend toward broader units enunciated in *Extendicare of West Virginia*, 203 NLRB No. 170, 83 LRRM 1242 (1973).[1]

---

[1] By our reference to *Extendicare*, we do not necessarily approve of all of the holdings of that decision.

S.Conf.Rep.No. 988, 93d Cong., 2d Sess., *reprinted in* [1974] U.S.Code Cong. & Admin.News pp. 3946, 3950; S.Rept.No.766, 93d Cong., 2d Sess. 5 (1974); H.Rept.No. 1051, 93d Cong., 2d Sess. 7 (1974).

Much has been written concerning the committees' statements in this area. *Mary Thompson Hospital, Inc. v. N. L. R. B.*, 621 F.2d 858 (7th Cir. 1980); *Allegheny General Hospital v. N. L. R. B.*, 608 F.2d 965 (3d Cir. 1979); *N. L. R. B. v. Mercy Hospital Ass'n.*, 606 F.2d 22 (2d Cir. 1979), *cert. denied*, 445 U.S. 971, 100 S.Ct. 1645, 64 L.Ed.2d 248 (1980); *N. L. R. B. v. St. Francis Hospital of Lynwood*, 601 F.2d 404 (9th Cir. 1979); *N. L. R. B. v. West Suburban Hospital*, 570 F.2d 213 (7th Cir. 1978); *St. Vincent's Hospital v. N. L. R. B.*, 567 F.2d 588 (3d Cir. 1977); *Long Island College Hospital v. N. L. R. B.*, 566 F.2d 833 (2d Cir. 1977), *cert. denied*, 435 U.S. 996, 98 S.Ct. 1647, 56 L.Ed.2d 84 (1978); *Memorial Hospital of Roxborough v. N. L. R. B.*, 545 F.2d 351 (3d Cir. 1976). With most of it we agree. In one statement, we heartily concur:

> Congress directed the Board to apply a standard in this field that was not traditional. Proliferation of units in industrial settings has not been the subject of congressional attention but fragmentation in the health care field has aroused legislative apprehension.

*St. Vincent's Hospital v. N. L. R. B., supra*, at p. 592.

### A.
### Unit Scope

The appropriateness of a bargaining unit depends on both its scope and composition. We here deal with the first consideration—

---

[2] It is settled that "an employer may secure judicial review of a unit determination by simply refusing to bargain with a union after its certification." *Osteopathic Hospital Founders Asso. v. NLRB*, 618 F.2d 633, 640 (10th Cir. 1980).

whether the bargaining unit should comprise employees solely at St. Luke's Hospital or at all employer facilities.

The Board has declined to accede to Congress' directive in determining issues of unit scope. In *Memorial Medical*, 230 N.L.R.B. No. 140 n.5 (1977), the Board held that the legislative history of the 1974 amendments demonstrates that concern with bargaining unit proliferation was solely with the composition of units within particular facilities, not with the question of whether the unit's scope should include one facility or several facilities.

■ Rather than apply Congress' directive, the Board has presumed single facility units appropriate "where there is no bargaining history in a more comprehensive unit and the degree of functional integration with other facilities is insufficient to negate the separate identity of the facility in which a union seeks representative status." *Samaritan Health Services, Inc.*, 238 N.L.R.B. No. 56 (1978). The presumption is, of course, rebuttable. *Id.* Among the factors considered are the geographic proximity of the facilities, history of collective bargaining unionization, extent of employee interchange, functional integration of operations, and centralization of management, particularly in regard to control of personnel and labor relations. *See e. g., N. L. R. B. v. Groendyke Transport, Inc.*, 417 F.2d 33 (10th Cir. 1969), *cert. denied*, 397 U.S. 935, 90 S.Ct. 944, 25 L.Ed.2d 116 (1970); *Magic Pan, Inc. v. N. L. R. B.*, 627 F.2d 105 (7th Cir. 1980); *N. L. R. B. v. Chicago Health and Tennis Clubs, Inc.*, 567 F.2d 331 (7th Cir. 1977), *cert. denied*, 437 U.S. 904, 98 S.Ct. 3089, 57 L.Ed.2d 1133 (1978).

Consistent with the Board's views, the regional director applied the presumption here holding that "while a systemwide unit may be appropriate, the evidence does not rebut the presumption." R., Vol. I, p. 4. The Medical Center argues that the application of this presumption is inconsistent with the congressional admonition against undue proliferation of bargaining units in the health care field.

■ The issue as to what unit is appropriate for bargaining rests in the sound discretion of the Board. *Packard Motor Car Co. v. N. L. R. B.*, 330 U.S. 485, 67 S.Ct. 789, 91 L.Ed.2d 1040 (1947); *Newspaper Printing Corp. v. N. L. R. B.*, 625 F.2d 956 (10th Cir. 1980). Nevertheless, we must insure that the Board's exercise of discretion is not unreasonable, arbitrary, unsupported by the evidence, or in conflict with congressional intent. *S. E. C. v. Sloan*, 436 U.S. 103, 98 S.Ct. 1702, 56 L.Ed.2d 148 (1978); *N. L. R. B. v. Brown*, 380 U.S. 278, 85 S.Ct. 980, 13 L.Ed.2d 839 (1965).

■ Our reading of the legislative history underlying the 1974 amendments confirms the Board's views that the references "cautioning against undue proliferation in the health care field refer to matters involving unit composition, that is, the types of employees to be represented in a bargaining unit ... with which any single institution must collectively bargain." *Memorial Medical, supra*, at n. 5. We do not agree, however, that this concern necessarily demonstrates congressional insensitivity to proliferation problems caused by mechanical application of the presumption to issues of unit scope. Nor do we believe Congress' silence in this area blindly constituted ratification of the single facility presumption in health care facilities. In our view, it appears more likely that Congress did not anticipate the issue.

The Board is given broad authority to determine the unit appropriate for collective bargaining under section 9(b) of the Act, 29 U.S.C.A. § 159(b). Neither the Act nor the legislative history offer conclusive answers to the issue at bar. "But the absence of specific legislative history in no way modifies the conventional judicial duty to give faithful meaning to the language Congress adopted in light of the evident legislative purpose in enacting the law in question." *United States v. Bornstein*, 423 U.S. 303, 310, 96 S.Ct. 523, 528, 46 L.Ed.2d 514 (1976).

■ It has long been a "familiar rule, that a thing may be within the letter of the statute and yet not within the statute, be-

cause not within its spirit, nor within the intention of its makers." *Steelworkers v. Weber*, 443 U.S. 193, 201, 99 S.Ct. 2721, 2726, 61 L.Ed.2d 480 (1979), *quoting Holy Trinity Church v. United States*, 143 U.S. 457, 459, 12 S.Ct. 511, 512, 36 L.Ed. 226 (1892). In the construction of labor legislation the principle has "particular application". *Woodwork Manufacturers v. N. L. R. B.*, 386 U.S. 612, 619, 87 S.Ct. 1250, 1255, 18 L.Ed.2d 357 (1967). This is so because legislation such as that involved here is "to a marked degree, the result of conflict and compromise between strong contending forces and deeply held views on the role of organized labor". *Local 1976, United Brotherhood of Carpenters v. N. L. R. B.*, 357 U.S. 93, 99–100, 78 S.Ct. 1011, 1016, 2 L.Ed.2d 1186 (1958); *Woodwork Manufacturers v. N. L. R. B., supra.*

■ The legislative history here reveals a strong current of congressional concern for the problems engendered by unwarranted unit fragmentation whether it be in composition or scope. As we view it, the Board's refusal to consider Congress' directive with regard to scope issues has subjected the health care industry to the very dangers Congress sought to prevent.

■ We hold that the traditional factors used in scope determinations "must be put in balance against the public interest in preventing fragmentation in the health care field." *St. Vincent's Hospital v. N. L. R. B., supra*, at p. 592. Moreover, the Board must specify "the manner in which its unit determination[s] . . . implement[ ] or reflect[ ] that admonition." *N. L. R. B. v. West Suburban Hospital, supra*, at p. 216.

■ We recognize that labor legislation should normally be construed in a liberal manner to effectuate its remedial purposes. However, in our anxiety to aid the congressional purpose of promoting industrial stabilization through collective bargaining, we must guard against extending the scope of the statute beyond Congress' intent. *62 Cases of Jam v. United States*, 340 U.S. 593, 600, 71 S.Ct. 515, 520, 95 L.Ed. 566 (1951). The Board has failed to recognize Congress' directive in unit scope determinations.

## Unit Composition

We now turn to the question of whether the Board erred in its determination of the unit's composition.

In the representation proceeding, the regional director ruled that (a) a unit restricted to registered nurses is presumptively appropriate, and (b) based on the Board's singularity of interests analysis, the presumption in favor of the registered nurses unit was not *overcome* by the Medical Center. Inasmuch as the Board erred in accepting the presumption of appropriateness, we must deny enforcement of its order.

### (a)

The use of rebuttable presumptions is tied to various rationale—judicial economy, regularity and fairness; probability; and public policy. Louisell and Mueller, *Federal Evidence* § 68, pp. 541–542. Yet, the procedural effects may differ. Most affect only the burden of producing evidence. *See e. g.*, Fed.Rules Evid. rule 301, 28 U.S.C.A. Others affect both the burdens of producing evidence *and* of persuasion. *See e. g. Keyes v. School District No. 1, Denver, Colo.*, 413 U.S. 189, 93 S.Ct. 2686, 37 L.Ed.2d 548 (1973). In those presumptions falling within the first category, "the presumption *disappears* upon introduction of evidence sufficient to sustain a finding of the nonexistence of the presumed fact. [Emphasis supplied]. Louisell and Mueller, *supra* at § 69, pp. 554–555. *See* Fed.Rules Evid. rule 301, 28 U.S.C.A.; Comm. of Conf.Rep.No.93–1597, 93d Cong. 2d Sess., *reprinted* [1974] U.S.Code Cong. & Admin.News pp. 7098, 7099. Rebuttable presumptions falling within the second category "retain their vitality until the trier of fact is persuaded as to the nonexistence of the presumed fact." Louisell and Mueller, *supra* at § 69, p. 555.

Our review of the record convinces us that the rebuttable presumption applied in this case shifted *both* the burdens of producing evidence *and* persuasion. The regional director specifically held that the presumption was not overcome by the Medical Center's evidence.

In our view, there was sufficient evidence adduced to sustain the appropriateness of an all professional unit, excluding physicians. We, of course, focus on the "disparity of interests between employee groups which would prohibit or impede fair representation of employee interests." *N.L.R.B. v. St. Francis Hospital of Lynwood, supra,* at p. 419. A multidisciplinary team approach to patient care is employed by the Hospital. Interaction between registered nurses and other professionals is encouraged. Decentralization of the pharmacy has occurred with the physical relocation of individual pharmacists to nursing stations at patient care units. Social workers at the facility spend one-half their time in the patient care units. This, of course, results in substantial interaction between these professionals and the staff nurses.

Several nurses at the facility observed that they have little contact with nurses from units other than their own. One postoperative nurse observed that she had more contact with physical therapists than nurses outside her specialty. Other specialty nurses supported this view. Christine Tanner, a noted nurse educator, testified that nurses who specialize often have more in common with persons in disciplines related to their specialties than other registered nurses practicing in other specialty areas.

Certain of the registered nurses work 3:00 p. m.–11:30 p. m. or 11:00 p. m.–7:30 a. m. This factor alone, however, is not dispositive. *Id.* at p. 419. Similarly, the licensing-education requirements, and departmental segregation are not wholly controlling. *Id.* at p. 419. "The fact that a state may choose to regulate a particular occupation should not be controlling in the determination of an appropriate bargaining unit." *Id.* at p. 420.

In sum, the evidence presented was sufficient to sustain a finding of the inappropriateness of the proposed unit had it been accepted. If the presumption had simply shifted the burden of producing evidence to the employer, the offer of this contradictory evidence would have neutralized the presumption.

■ In unfair labor practice hearings, such as that presented here, the Board, to the extent practicable, must apply the rules of evidence governing proceedings in the district courts of the United States. N.L. R.A. § 10(b); 29 U.S.C.A. § 160(b); *N.L. R.B. v. Process & Pollution Control Co.,* 588 F.2d 786 (10th Cir. 1978). When the Federal Rules of Evidence were adopted, Congress provided that "a presumption imposes on the party against whom it is directed the burden of going forward with evidence to rebut or meet the presumption, but does not shift to such party the burden of proof in the sense of the risk of nonpersuasion, which remains throughout the trial upon the party against whom it was originally cast." Fed.Rules Evid. rule 301, 28 U.S. C.A.

■ Application of the presumption employed here violated the mandate of Federal Rule of Evidence 301.[3] Such a presumption cannot be used to alter General Counsel's burden to establish by a preponderance of evidence that an unfair labor practice has occurred. *See N.L.R.B. v. Dillon Stores,* 643 F.2d 687 (10th Cir. 1981); *N.L.R.B. v. First Nat. Bank of Pueblo,* 623 F.2d 686 (10th Cir. 1980); *N.L.R.B. v. Silver Spur Casino,* 623 F.2d 571 (9th Cir. 1980), cert. denied, —— U.S. ——, 101 S.Ct. 1973, 68 L.Ed.2d 294 (1981). The Board's order was impermissibly tainted by the presumption's application.[4]

---

**3.** To the extent that *N.L.R.B. v. Tahoe Nugget, Inc.,* 584 F.2d 293 (9th Cir. 1978), cert. denied, 442 U.S. 921, 99 S.Ct. 2847, 61 L.Ed.2d 290 (1979) is contrary, we decline to follow it.

**4.** The decision and order of the Board was entered on stipulation of the parties. This does not, however, change our views. That stipulation, specifically approved by the Board, provides in part:

It is agreed that this case shall be in the same posture before the United States Court of Appeals for the Tenth Circuit as it would have been if the standard procedures had been followed, i. e., after a Complaint had issued, the Employer would have filed an answer defending the allegations on the grounds that the bargaining unit is inappropriate, the Union would have moved for summary judgment, the Employer would have

(b)

■ We do not rest our decision on this ground alone. In our view, any use of a presumption which casts upon the Medical Center the burden of producing evidence of the inappropriateness of the unit violates Congress' directive of nonproliferation in the health care industry. The legislative history underlying the 1974 amendments expresses concern that egregious unit proliferation such as found in the construction trades, could impede effective health care delivery. We agree with our sister circuits that "the Board *must* expressly consider the congressional admonition in making unit determinations," *Mary Thompson Hospital, Inc. v. N.L.R.B., supra,* at p. 864, and focus on the "disparity of interests between employee groups which would prohibit or inhibit fair representation of employee interests." *N.L.R.B. v. St. Francis Hospital of Lynwood, supra,* at p. 419.

■ We hold that requiring health care industry employers to bear the burden of producing evidence that limited bargaining units are more inappropriate than broader bargaining units runs contrary to Congress' admonition. Rather, the Board must specify "the manner in which its unit determination in this case implement[s] or reflect[s] that admonition." *N.L.R.B. v. West Suburban Hospital, supra,* at p. 216.

"The power of an administrative . . . board to administer a federal statute and to prescribe rules and regulations to that end is . . . [only] the power to adopt regulations to carry into effect the will of Congress as expressed by the statute. [An administrative decision] which does not do this, but operates to create a rule out of harmony

with the statute, is a mere nullity." *United States v. Larionoff,* 431 U.S. 864, 873 n. 12, 97 S.Ct. 2150, 2156, 53 L.Ed.2d 48 (1977), *quoting Manhattan General Equip. Co. v. Commissioner,* 297 U.S. 129, 134, 56 S.Ct. 397, 400, 80 L.Ed. 528 (1936).[5]

*Conclusion*

We must give "due observance [to] the distribution of authority made by Congress as between its power to regulate commerce and the reviewing power which it has conferred upon the courts under Article III of the Constitution." *F.C.C. v. Pottsville Broadcasting Co.,* 309 U.S. 134, 141, 60 S.Ct. 437, 440, 84 L.Ed. 656 (1940). Recognizing this, our function "ends when an error of law is laid bare." *F.P.C. v. Idaho Power Co.,* 344 U.S. 17, 20, 73 S.Ct. 85, 87, 97 L.Ed. 15 (1952). At that point, our only recourse is to remand to the Board for reconsideration in light of our holding.

"Application of that general principle in this case best respects the congressional scheme investing the Board and not the courts with broad powers to fashion remedies that will effectuate national labor policy." *N.L.R.B. v. Food Store Employees,* 417 U.S. 1, 10, 94 S.Ct. 2074, 2080, 40 L.Ed.2d 612 (1974). *See also, South Prairie Construction Co. v. Local 627, Intern. Union of Operating Engineers,* 425 U.S. 800, 96 S.Ct. 1842, 48 L.Ed.2d 382 (1976) (per curiam). "For purposes of affirming no less than reversing its orders, an appellate court cannot intrude upon the domain which Congress has exclusively entrusted to an administrative agency." *Securities Comm'n. v. Chenery Corp.,* 318 U.S. 80, 88, 63 S.Ct. 454, 459, 87 L.Ed. 626 (1943).[6]

---

responded to the motion again asserting the bargaining unit defense, the National Labor Relations Board would have granted the motion for summary judgment, and the Employer would have then appealed to the United States Court of Appeals for the Tenth Circuit.

5. For these same reasons, the Board erred in applying its single facility presumption to the issue of unit scope. *See infra.*

6. In our case remand is especially justified. Following the decision in this case, the Board reconsidered its prior opinions in the health

care industry as regards registered nurse units. *See Newton-Wellesley Hospital,* 250 NLRB No. 86 (1980). *See also: National Medical Convalescent of San Diego,* 254 NLRB No. 163 (1981); *Doctor's Hospital of Montclair,* 254 NLRB No. 175 (1981); *Federick Memorial Hospital, Inc.,* 254 NLRB No. 2 (1981); *Addison Gilbert Hospital,* 253 NLRB No. 141 (1981); *Mount Airy Foundation,* 253 NLRB No. 139 (1981); and *Brookwood Hospital Management Corp.,* 252 NLRB No. 107 (1980). An appellate court reviewing an agency decision following an intervening change of policy should remand to per-

The petition for review is granted. The cross-application for enforcement is denied. The cause is remanded for proceedings consistent with this opinion.

IT IS SO ORDERED.

mit the agency to decide in the first instance whether it should reframe its order to better effectuate the policies underlying the Act it is charged with administering. *NLRB v. Food Store Employees, supra,* at p. 10, 94 S.Ct. at p. 2080. In this connection we note our disagreement with the Board's view that the "community of interests" test and the "disparity of interests" test are essentially identical. It is not the similarity of employees' training, hours, condi-tions and activities which determine the appropriateness of the unit. It is, rather, the dissimilarity of interests relevant to the collective bargaining process that determines which employees are not to be included in a proposed unit. The proper approach is to begin with a broad proposed unit and then exclude employees with disparate interests. One should not start with a narrow unit, such as registered nurses, and then add professionals with similar interests.