884 F.2d 518
 132 L.R.R.M. (BNA) 2055, 112 Lab.Cas. P 11,382
 ST. ANTHONY HOSPITAL SYSTEMS, INC., Petitioner,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent.
St. Anthony Federation of Nurses and Health Professionals,
AFT/FNHP, CFT, AFL-CIO, Intervenor.
 No. 87-1229.
 United States Court of Appeals,
Tenth Circuit.
 Aug. 8, 1989.
Rehearing Denied Sept. 18, 1989.
 
 Earl K. Madsen (K. Preston Oade, Jr., with him on the briefs) of Bradley, Campbell & Carney, Golden, Colo., for petitioner.
 Charles P. Donnelly (John H. Ferguson, Rosemary M. Collyer, John E. Higgins, Jr., Robert E. Allen, and Elliott Moore with him on the brief) of the N.L.R.B., Washington, D.C., for respondent.
 Lawrence Poltrock of DeJong, Poltrock & Giampietro, Chicago, Ill., and David M. Silberman and Laurence Gold, Washington, D.C., for intervenor.
 On Petition for Review of a Decision of the National Labor Relations Board.
 Before MOORE and ANDERSON, Circuit Judges, and BROWN,* District judge.
 JOHN P. MOORE, Circuit Judge.
 
 
 1
 In this petition for review St. Anthony Hospital Systems, Inc. (Hospital) challenges a National Labor Relations Board decision ordering the Hospital to bargain with the St. Anthony Federation of Nurses and Health Professionals, AFT/FNHP, CFT, AFL-CIO (Union). Specifically, the Hospital claims the Board's all technical bargaining unit does not satisfy the "disparity of interests" test adopted by this court in Presbyterian/St. Luke's Medical Center v. NLRB, 653 F.2d 450 (10th Cir.1981) (St. Luke's ), modified, Beth Israel Hosp. and Geriatric Center v. NLRB, 688 F.2d 697 (10th Cir.) (en banc), cert. dismissed, 459 U.S. 1025, 103 S.Ct. 433, 74 L.Ed.2d 522 (1982). In addition, the Hospital contends a new election is necessary because the radiologic technologists and registered respiratory therapist I and II positions included in the technical unit more appropriately belong in the professional unit. We do not accept either of the Hospital's claims; consequently, the Hospital's petition for review is denied and the Board's cross-petition for enforcement is granted.
 
 
 2
 St. Anthony Hospital Systems, Inc. operates two hospital facilities within a ten mile radius in the Denver metropolitan area. In December 1979, the Union petitioned the Board to represent a bargaining unit consisting of the Hospital's 355 technical employees who work at these two facilities. The Hospital, however, contended that the appropriate bargaining unit should consist not only of all of the Hospital's technical employees but some 400 service and maintenance employees as well.
 
 
 3
 In March 1980, the Regional Director, applying the "community of interests" test, concluded that the appropriate bargaining unit consisted only of technical employees. He therefore ordered an election for this unit. The technical unit employees then voted 147 to 129 in favor of representation by the Union. The Hospital, nonetheless, refused to bargain with the Union. The Union then filed unfair labor practice charges against the Hospital prompting the General Counsel to issue a complaint and move for summary judgment.
 
 
 4
 Meanwhile, this court decided St. Luke's and held that the traditional "community of interests" standard could not be applied to the determination of bargaining units in the health care field.[1] 653 F.2d at 455. We reasoned that for health care facilities the Board must pay heed to the legislative history of the 1974 Amendments to the National Labor Relations Act in which Congress directed the Board to prevent undue proliferation of bargaining units in the health care field. Id. at 453. Given Congress' admonition, we concluded that "traditional factors used in scope determinations 'must be put in balance against the public interest in preventing fragmentation in the health care field.' " Id. at 455 (quoting St. Vincent's Hosp. v. NLRB, 567 F.2d 588, 592 (3d Cir.1977)). Finally, we held that the proper analysis necessitates focusing on the "disparity of interests" between employee groups which inhibits fair representation rather than similarities of interest which the traditional "community of interests" test mandates. St. Luke's, 653 F.2d at 456.
 
 
 5
 In light of St. Luke's and similar decisions in other circuits[2], the Board--subsequent to the initial unit determination in the case before us--decided St. Francis Hosp., 271 N.L.R.B. 948 (1984) (St. Francis II ), rev'd,International Bhd. of Elec. Workers v. NLRB, 814 F.2d 697 (D.C.Cir.1987). There, the Board formally adopted the "disparity of interests" test for unit determinations in the health care field.[3] 271 N.L.R.B. at 953. Because of this change, the Board denied the General Counsel's motion for summary judgment in the instant case and remanded it to the Regional Director for reconsideration consistent with the Board's holding in St. Francis II.
 
 
 6
 In December 1985, the Regional Director held a second hearing on the appropriateness of the all technical unit. The Director then upheld his 1980 decision approving the all technical unit reasoning that there were sharper than usual differences between the wages and working conditions of the technical employees and those in service/maintenance classifications. The Regional Director also concluded that he need not reconsider the Hospital's challenge as to the nonprofessional status of the radiologic technologists and registered respiratory therapists I and II (respiratory therapists) because the "disparity of interests" test did not affect the statutory definition of professional.
 
 
 7
 After the Hospital again refused to bargain with the Union, the General Counsel renewed the motion for summary judgment. The Hospital denied the claim of an unfair labor practice contending the bargaining unit was not appropriate. The Board affirmed the Regional Director's application of the "disparity of interests" test and thus granted the motion. In addition, the Board held that the Hospital was not entitled to relitigate the issue of the professional status of the radiologic technologists or respiratory therapists.[4] Consequently, the Board ordered the Hospital to bargain with the Union. The Hospital challenges the Board's ruling in the petition for review now before us.
 
 
 8
 While the proceedings concerning the appropriateness of the all technical unit continued, related proceedings regarding the breadth of a professional unit at the Hospital were taking place. Initially, in December 1979, the Regional Director certified a professional unit of only registered nurses. The unit elected union representation by a 310 to 172 vote. The Hospital then refused to bargain claiming the unit was too narrow. The Board found that the registered nurse unit was appropriate and held that the Hospital violated the Act by refusing to bargain. Upon review, however, we reversed and remanded the case to the Board for reconsideration in light of the "disparity of interests" test espoused in St. Luke's. St. Anthony Hosp. Sys. v. NLRB, 655 F.2d 1028 (10th Cir.1981), modified sub nom. Beth Israel Hosp. and Geriatric Center v. NLRB, 688 F.2d 697 (10th Cir.) (en banc), appeal dismissed, 459 U.S. 1025, 103 S.Ct. 433, 74 L.Ed.2d 522 (1982).
 
 
 9
 In August 1985, the Regional Director determined on remand that the appropriate bargaining unit was not the unit of only registered nurses as he had previously determined but a unit consisting of all professionals. The Hospital petitioned the Board for a review of this decision contending that the radiologic technologist and respiratory therapist positions belong in the all professional unit and are therefore entitled to vote in this new election. The Board held that the Hospital raised "substantial and material issues" regarding the professional status of the radiologic technologists. Accordingly, the Board directed that the radiologic technologists be allowed to vote under the challenged vote procedure in the representation election for the all professional unit. The election resulted in a majority of unchallenged votes being cast against the Union; therefore, it was unnecessary for the Board to determine whether the radiologic technologist positions were appropriately classified as nonprofessional.
 
 I. Appropriate Bargaining Unit
 A. St. Luke's Affect on St. Francis II
 
 10
 At the outset, we find the Board's "disparity of interests" test as adopted in St. Francis II comports with our decision in St. Luke's. The Hospital errs in interpreting St. Luke's so rigidly. We are content that in St. Francis II the Board's formulation of its "disparity of interests" test took into account--as we mandated in St. Luke's--the admonition of Congress against the proliferation of bargaining units in the health care field. 271 N.L.R.B. at 953. Thus, when a bargaining unit satisfies the "disparity of interests" test, it necessarily complies with the congressional directive against unnecessary fragmentation of bargaining units. See Southwest Community Health Servs. v. NLRB, 726 F.2d 611, 613 (10th Cir.1984) ("The [disparity of interests] standard thus ensures compliance with the congressional mandate to avoid undue proliferation of bargaining units in the health care industry.").
 
 
 11
 B. Application of "Disparity of Interests" Test
 
 
 12
 Our standard of review of the Board's choice of a bargaining unit in the health care field is "whether the Board properly focused on the 'disparity of interests' between employee groups which would prohibit or inhibit fair representation of employee interests." Southwest Community Health Servs., 726 F.2d at 613 (quoting NLRB v. St. Francis Hosp. of Lynwood, 601 F.2d 404, 419 (9th Cir.1979)). This standard is more searching than the "arbitrary and without substantial support" standard traditionally applied to unit determinations in non-health care industries. Southwest Community Health Servs., 726 F.2d at 613. The point of this more rigorous standard is to ensure that the Board correctly applies the "disparity of interests" test to bargaining unit determinations in the health care field rather than the traditional "community of interests" test and its concomitant presumption of appropriateness. Thus, this less deferential standard does not grant reviewing courts a license to interfere with the Board's factual findings as long as they are supported by substantial evidence in the record. See 29 U.S.C. Sec. 160(f).
 
 
 13
 The "disparity of interests" test adopted by this court in St. Luke's was not intended to shackle the Board with an onerous burden. Beth Israel Hosp., 688 F.2d at 698. Nor does it invariably require one bargaining unit for all nonprofessional employees. In fact, it is plausible that bargaining units as narrow as ambulance service employees or registered nurses may be wholly appropriate under the "disparity of interests" test. See Southwest Community Health Servs., 726 F.2d at 614; Beth Israel Hosp., 688 F.2d at 698. We do not believe that the Board applied a legal standard incongruous with St. Luke's just because it held appropriate the same bargaining unit under the "disparity of interests" test as it did under the "community of interests" test.
 
 
 14
 Nor do we agree with the Hospital's allegation that the Regional Director was merely giving lip service to the "disparity of interests" test mandated by St. Luke's. This allegation is undermined by the fact that in the related case, also involving the Hospital, the Regional Director, on remand for application of the "disparity of interests" test, broadened the registered nurse unit to a unit of all professionals.[5]
 
 
 15
 In St. Luke's we held that in applying the "disparity of interests" test it is necessary to start with a broad unit and exclude employees with disparate interests. 653 F.2d at 457-58 n. 6. The Regional Director complied with this directive. He started with a broad unit of all nonprofessionals and excluded service and maintenance employees because he found sharper than usual differences between the two groups of employees. Thus, this case is unlike Southwest Community Health Servs., 726 F.2d at 611, where we denied enforcement of the Board's order when the Regional Director began his analysis with a narrow unit of ambulance service employees. Accord St. Anthony Hosp. Sys., 655 F.2d at 1028 (enforcement denied when analysis had begun with unit consisting solely of registered nurses).
 
 
 16
 The Hospital contends that all nonprofessionals belong in one unit. In effect, the Hospital believes that the interests of salad makers and laundry workers are not different enough from EKG technicians and surgical technicians to justify placing them in different bargaining units. We disagree. The Regional Director, in finding sharper than usual differences between technical and service/maintenance employees examined traditional criteria such as wages, education and training, degree of interchange, and commonality of supervision.
 
 
 17
 The Regional Director concluded that the average starting wages for the large majority of technical employees were $2 or 35% higher than the average starting wages for service/maintenance employees. He also found a significant difference between the education and training of the technical employees and the service/maintenance employees. Specifically, the Regional Director determined that almost all of the technical classifications required formal training beyond high school, while very few of the service/maintenance classifications required such training.
 
 
 18
 In addition, the Regional Director found minimal interchange between technical and service/maintenance employees and that technical and service/maintenance employees do not for the most part have common supervision. Finally, the Regional Director concluded that although there was some integration of job duties between technical and service/maintenance employees, it did not usually involve actual assistance of one another. In light of these factual findings, the Regional Director held there are sharper than usual differences between the Hospital's technical employees and service/maintenance employees; accordingly, he reaffirmed his previous decision that a unit of exclusively technical employees was appropriate.
 
 
 19
 The Hospital has not convinced us these factual findings are unsupported by the record; thus, we will not disturb them. In addition, we are satisfied that the Board has met its burden of showing that the interests of the technical and service/maintenance employees are disparate enough to justify placing the technical employees in a separate unit. See Southwest Community Health Servs., 726 F.2d at 613. Therefore, we affirm the Board's finding that an all technical unit is appropriate.
 
 
 20
 II. Status of Radiologic Technologists and Registered Respiratory Therapists I and II
 
 
 21
 Lastly, we address the issue of whether the radiologic technologists and the respiratory therapists should have been placed in the professional unit rather than the technical unit. Professional employee is expressly defined in 29 U.S.C. Sec. 152(12).[6] Section 159(b) prohibits the Board from placing professionals in the same bargaining unit as nonprofessionals unless a majority of the professionals consent to the unit. The hospital argues the radiologic technologists and respiratory therapists are in fact "professional" positions and, thus, were wrongfully included within the all technical unit.
 
 
 22
 In light of the Board's expertise in ascertaining job classifications, its determination is entitled to deference by reviewing courts. Season-All Indus., Inc. v. NLRB, 654 F.2d 932, 942 (3d Cir.1981); cf. NLRB v. Corral Sportswear Co., 383 F.2d 961, 963 (10th Cir.1967) (Board determination of "supervisor" entitled to considerable deference), cert. denied, 390 U.S. 995, 88 S.Ct. 1196, 20 L.Ed.2d 94 (1968). Moreover, the Act decrees that the Board's factual findings are conclusive if supported by substantial evidence on the record. 29 U.S.C. Sec. 160(f).
 
 
 23
 The Regional Director concluded that the evidence did not support a finding that the radiologic technologist and the respiratory therapist positions satisfied the strict requirements of a "professional" under Sec. 152(12). The Hospital contends the evidence cannot sustain this finding. The Hospital has not persuaded us, however, that the Regional Director's conclusion is unsupported by substantial evidence in the record.[7]
 
 
 24
 The Hospital buttresses its claim by contending that the Regional Director's finding that these positions were nonprofessional conflicts with the congressional admonition against fragmentation of bargaining units in the health care industry. In effect, the Hospital attempts to graft the legislative history of the 1974 Amendments upon the statutory definition of professional. We decline to do so. Congress expressed no intention of broadening the definition of professional as applied to the health care field.
 
 
 25
 To be sure, the Hospital is correct in stating that the appropriateness of a bargaining unit does depend--as we stated in St. Luke's--on unit scope and composition. 653 F.2d at 453. In this regard, the Regional Director did err by stating that he need only review unit scope and not composition. Nonetheless, we find the Regional Director's statement a poor choice of words which is harmless. Taken in context, it is evident the gist of the Regional Director's reasoning was that the "disparity of interests" test did not affect the statutory definition of professional. Thus, the Regional Director concluded he was not compelled on remand to reexamine the nonprofessional status of either the radiologic technologists or the respiratory therapists. We agree.
 
 
 26
 The Hospital also points to the fact that in the related proceeding concerning the all professional unit, the Board allowed the radiologic technologists to vote under the challenged voting procedure because the Hospital raised "substantial and material issues" as to their professional status. This action, however, did not constitute a determination that the radiologic technologists were professionals but only allowed the election to take place without further delay. Since the election was decided by a majority of unchallenged votes, there was no need for the Board to address the issue any further in that case. See Medical Center at Bowling Green v. NLRB, 712 F.2d 1091, 1093 (6th Cir.1983) (approving of challenged vote procedure). Consequently, we do not find the Board's order allowing the radiologic technologists to vote under challenged voting procedures in the all professional unit election inconsistent with its ruling affirming their technical status.
 
 
 27
 Finally, we believe any changes, subsequent to the original election, in the job responsibilities of the radiologic technologists and respiratory therapists are more appropriately addressed in a unit clarification proceeding authorized under 29 C.F.R. Sec. 102.60 (1988). See NLRB v. Magna Corp., 734 F.2d 1057, 1061 (5th Cir.1984) (unit clarification appropriate when job responsibilities have changed). To hold otherwise would allow employers to nullify unfavorable elections simply by modifying the job responsibilities of a particular position.[8] The more principled approach is to review the status of a job classification as it existed before the election. Cf. Westchester Plastics of Ohio, Inc. v. NLRB, 401 F.2d 903, 907 (6th Cir.1968) (eligibility of individual employee determined by individual's status at eligibility date and election date). In the case before us, the Regional Director's initial determination that the radiologic technologist and respiratory therapist positions were, at that time, technical is supported by substantial evidence in the record. Therefore, the Hospital's petition for review is denied and the Board's cross-petition for enforcement is granted.
 
 
 28
 IT IS SO ORDERED.
 
 
 
 *
 Honorable Wesley E. Brown, Senior Judge for the United States District Court of Kansas, sitting by designation
 
 
 [1]
 The "community of interests" test has been traditionally applied by the Board to bargaining unit determinations outside the health care field for over 40 years. St. Vincent's Hosp., 285 N.L.R.B. No. 64, 1986-87 NLRB Dec. (CCH) p 18,891 at 32,347 (Aug. 19, 1987). The "community of interests" test focuses on the similarities of employee training, hours, wages, and working conditions which justify a separate bargaining unit. In contrast, the "disparity of interests" test begins with a broad unit and excludes employees with disparate interests. See St. Luke's, 653 F.2d at 457-58 n. 6
 
 
 [2]
 See, e.g., NLRB v. HMO Int'l, 678 F.2d 806 (9th Cir.1982) (applied disparity of interests test); Trustees of Masonic Hall and Asylum Fund v. NLRB, 699 F.2d 626 (2d Cir.1983) (balance "community of interests" factors against public interest in preventing fragmentation)
 
 
 [3]
 In International Bhd. of Elec. Workers v. NLRB, 814 F.2d 697 (D.C.Cir.1987), the D.C. Circuit reversed St. Francis II and disapproved of our decision in St. Luke's. In essence, the court refused to rely on the 1974 Amendments to require a more rigorous bargaining unit standard for the health care industry: "Although legislative history may give meaning to ambiguous statutory provisions, courts have no authority to enforce alleged principles gleaned solely from legislative history that has no statutory reference point." 814 F.2d at 699-700. Rather than look to the Supreme Court to resolve this split in the circuits, the Board began rule making proceedings to replace the case by case unit determinations with rules dictating appropriate bargaining units for the health care field. 52 Fed.Reg. 25142 (1987) (to be codified at 29 C.F.R. pt. 103) (proposed July 2, 1987). Notwithstanding International Bhd., the Board held the "disparity of interests" test espoused in St. Francis II would continue to apply during the rule making process. See St. Vincent's Hosp., 285 N.L.R.B. No. 64, 1986-87 NLRB Dec. (CCH) p 18,891 (Aug. 19, 1987). Recently, after considerable input from the health care industry and unions concerning the proliferation of bargaining units, the Board promulgated its final regulations. 54 Fed.Reg. 16336 (April 21, 1989) (to be codified at 29 C.F.R. Sec. 103.30). These regulations require, in the absence of extraordinary circumstances, that all technical employees be placed in one bargaining unit
 
 
 [4]
 In a brief dissent, Chairman Dotson contended that a hearing is necessary on the correct unit placement of the radiology technologists
 
 
 [5]
 Our decision in Beth Israel Hosp., 688 F.2d at 697, by no means compelled the Regional Director to broaden the unit to include all professionals. Indeed, we stated that a narrow unit consisting solely of registered nurses is acceptable if properly justified. Id. at 698
 
 
 [6]
 Professional employee is defined as:
 (a) any employee engaged in work (i) predominantly intellectual and varied in character as opposed to routine mental, manual, mechanical, or physical work; (ii) involving the consistent exercise of discretion and judgment in its performance; (iii) of such a character that the output produced or the result accomplished cannot be standardized in relation to a given period of time; (iv) requiring knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction and study in an institution of higher learning or a hospital, as distinguished from a general academic education or from an apprenticeship or from training in the performance of routine mental, manual, or physical processes; or
 (b) any employee, who (i) has completed the course of specialized intellectual instruction and study described in clause (iv) or paragraph (a), and (ii) is performing related work under the supervision of a professional person to qualify himself to become a professional employee as defined in paragraph (a).
 29 U.S.C. Sec. 152(12).
 
 
 [7]
 The Board has previously found that radiologic technologists are technical rather than professional positions. See Sutter Community Hosp. of Sacramento, 227 N.L.R.B. 181, 186 (1976)
 
 
 [8]
 The Hospital, in its reply brief, contends that a unit clarification proceeding is not a proper remedy in this case because a question regarding representation exists. The regulations do state a petition for unit clarification proceedings may be filed "in the absence of a question concerning representation." 29 C.F.R. Sec. 102.60(b) (1988). Nevertheless, we do not believe this rule precludes the Hospital from using the unit clarification procedure to address subsequent changes to job positions. The Hospital should not be allowed to use its challenge to the appropriateness of a bargaining unit to force this court to review the entirely different issue of whether subsequent changes affect the status of a job position when the latter is more properly addressed in a unit clarification proceeding