**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,

     Plaintiff - Appellant,

and

SAFIA ABDULLE ALI; SAHRA BASHI
ABDIRAHMAN; HANA BOKKU;
SADIYO HASSAN JAMA; SAIDA
WARSAME, a/k/a Amino Warsame,

     Intervenor Plaintiffs - Appellants,

v.

JETSTREAM GROUND SERVICES,
INC.,

     Defendant - Appellee.

No. 17-1003

_____

**Appeal from the United States District Court
for the District of Colorado
(D.C. No. 1:13-CV-02340-CMA-KMT)**
_____

Gail S. Coleman (James L. Lee, Deputy General Counsel, Jennifer S. Goldstein,
Associate General Counsel, and Elizabeth E. Theran, Acting Assistant General Counsel,
with her on the briefs), Equal Employment Opportunity Commission, Washington, D.C.,
for Plaintiff-Appellant.

Diane S. King and Hunter A. Swain, King & Greisen, LLP, Denver, Colorado, on the
briefs for Plaintiff-Intervenor-Appellants.

Ryan C. Brenton, Brenton Legal P.A., Fort Lauderdale, Florida, for Defendant Appellee.

_____

Before **KELLY**, **HARTZ**, and **HOLMES**, Circuit Judges.
_____

**HARTZ**, Circuit Judge.
_____

A jury rejected an employment-discrimination claim against JetStream Ground Services, Inc. filed by several Muslim women and the Equal Employment Opportunity Commission (EEOC) (collectively, Plaintiffs[1]), who alleged that JetStream discriminated against the women on religious grounds by refusing to hire them because they wore hijabs. Plaintiffs' sole argument on appeal is that the district court abused its discretion by refusing to impose a sanction on JetStream—either excluding evidence or instructing the jury that it must draw an adverse inference—because it disposed of records contrary to a federal regulation purportedly requiring their preservation. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm. Plaintiffs' argument that the exclusion sanction should have been applied was waived in their opening statement at trial. And the district court did not abuse its discretion in refusing to give an adverse-inference instruction after Plaintiffs conceded that destruction of the records was not in bad faith.

## I.     BACKGROUND

In October 2008 JetStream was selected by United Airlines to clean aircraft at Denver International Airport. To assist in staffing for the upcoming contract, JetStream

---

[1] The EEOC and the individual Plaintiffs (as a group) have been represented by separate counsel in district court and on appeal. But as far as we can tell, their positions on all issues have been fully aligned, and the individual Plaintiffs, rather than submitting a separate brief, have stated that they join the EEOC's brief on appeal. We will therefore not distinguish between them in discussing events in district court or issues on appeal.

2

scheduled a job fair for employees of AirServ Corp., the company that was continuing to do the work until JetStream's contract began. The individual Plaintiffs were employed by AirServ and participated in the job fair but were not hired, allegedly because of religious discrimination by JetStream based on their wearing hijabs.

Plaintiffs' theory of the case has been that although JetStream's dress policy was silent regarding head coverings, including hijabs, the co-owner of JetStream, David Norris, did not want to hire women who insisted on wearing hijabs at work. At trial the individual Plaintiffs testified to discriminatory statements made by Norris, and Plaintiffs offered supporting testimony from two former JetStream administrative managers who had since been terminated. One testified that she was instructed by JetStream's human-resources department to tell applicants that head coverings were not permitted, even for religious reasons. The other testified that at the job fair Norris said that he would not tolerate Muslim women wearing hijabs at work. Norris and other JetStream employees denied that the company opposed wearing hijabs on the job.

For the first several years of the controversy, JetStream asserted that the decisions not to hire the individual Plaintiffs were based on their applications and interviews. But a year into discovery, JetStream changed its position, arguing instead that the hiring decisions were based on the recommendations of Arnold Knoke, a supervisor at AirServ.

JetStream claimed the following: Two of its employees, Frank Austin and Gail Cadorniga, met with Knoke on November 5, 2008, to hear Knoke's recommendations on which AirServ employees to hire. During the meeting Austin and Cadorniga marked which employees Knoke recommended on an AirServ employee schedule provided by

3

Knoke that contained the names of all the AirServ employees. Austin wrote the names on a piece of paper; and promptly after the meeting Cadorniga obtained the phone numbers for the recommended persons from the applications. Cadorniga then entered the information into an Excel spreadsheet, which she saved on her laptop and a flash drive. Later that day the names of the successful applicants were posted in the break room for AirServ employees. Cadorniga neither added to the list anyone not recommended by Knoke, nor did she remove anyone from his recommended list. JetStream claims that Knoke's recommendations, and not any discriminatory animus, drove its hiring decisions.

Plaintiffs requested that JetStream produce, among other things, all documents related to the nondiscriminatory reasons for not hiring the individual Plaintiffs. JetStream produced a November 10 version of the Excel spreadsheet. Neither Cadorniga nor Austin could recall what had happened to their notes or the list with checked-off names, although both indicated that they could see no reason to have kept them. As for the earlier (November 5) version of the Excel spreadsheet, it was apparently updated as information was modified or added, although it is undisputed that the names on the November 10 spreadsheet are identical to the names posted in the employees' break room on November 5.

In a pretrial motion, Plaintiffs sought spoliation sanctions against JetStream. They claimed that JetStream's failure to maintain the original versions of the recommendations violated 29 C.F.R. § 1602.14, which requires employers to preserve for one year all personnel or employment records that it makes or keeps and, if a discrimination charge has been filed, to continue to preserve the records until final disposition of the charge.

4

(The first claims were filed against JetStream on February 5, 2009).[2] Plaintiffs argued that disposal of the handwritten notes deprived them of the opportunity to effectively rebut JetStream's defense because Plaintiffs were unable to compare the list of hires to the original documents from the meeting with Knoke and determine whether any names were added or removed after the receipt of Knoke's recommendations. Any changes, they argue, would indicate that someone (Plaintiffs suggest Norris) altered those recommendations, perhaps for discriminatory purposes.

Plaintiffs requested two alternative sanctions for the alleged spoliation: exclusion of testimony by JetStream's witnesses about the list of Knoke's recommendations, or an instruction to the jury that they should infer that the missing documents were harmful to JetStream. At the pretrial hearing the district court reserved ruling on the motion, stating that it needed to "hear the evidence at trial." Aplt. App. at 234. It said that it could not

---

[2] The pertinent part of the regulation states:

> Any personnel or employment record made or kept by an employer (including but not necessarily limited to . . . application forms submitted by applicants and other records having to do with hiring . . . ) shall be preserved by the employer for a period of one year from the date of the making of the record or the personnel action involved, whichever occurs later. . . . When a charge of discrimination has been filed, or an action brought by the Commission or the Attorney General, against an employer under title VII, the ADA, or GINA, the respondent employer shall preserve all personnel records relevant to the charge or action until final disposition of the charge or the action.

29 C.F.R. § 1602.14.

determine at that point whether JetStream acted in bad faith in discarding the documents or whether Plaintiffs would be prejudiced.[3]

At trial, Plaintiffs did not renew their request to exclude evidence of the Knoke list. On the contrary, during her opening statement the counsel for the EEOC, without objection from any other attorney, extensively discussed the list and JetStream's assertion that it relied upon it. Plaintiffs did, however, submit a proposed instruction telling the jury to assume that the destroyed list included recommendations that the individual Plaintiffs "were good workers and that they should be hired." Aplt. App. at 184. After a 14-day trial, the jury found for JetStream. Plaintiffs unsuccessfully moved for a new trial under Fed. R. Civ. P. 59, in part based on the district court's spoliation rulings.

## II. DISCUSSION

We review for abuse of discretion both the district court's denial of spoliation sanctions and its denial of the motion for a new trial. *See Turner v. Pub. Serv. Co. of Colo.¸* 563 F.3d 1136, 1150 (10th Cir. 2009) (spoliation); *Henning v. Union Pac. R. Co.*, 530 F.3d 1206, 1216 (10th Cir. 2008) (new trial). For purposes of this appeal we will assume without deciding that JetStream did violate 29 C.F.R. § 1602.14 by failing to preserve records of Knoke's recommendations. We analyze Plaintiffs' requested spoliation sanctions in turn.

---

[3] Plaintiffs' opening brief on appeal also complains that JetStream did not produce emails from Knoke regarding his recommendations. But they never requested spoliation sanctions based on that alleged failure to produce.

## A. Preclusion of Testimony

Plaintiffs argue that JetStream should have been precluded from testifying about Knoke's possible recommendations. But they never argued at trial that such evidence should be excluded. Although they filed a pretrial motion to exclude the evidence as a spoliation sanction, the district court deferred ruling on the motion. Only when the court rules definitively on the record before trial is the party seeking to exclude evidence excused from renewing the objection at trial. *See* Fed. R. Evid. 103(b); *McEwen v. City of Norman*, 926 F.2d 1539, 1543–44 (10th Cir. 1991). Although the district court's decision could still be reviewed for plain error, *see Nat'l Envtl. Serv. v. Ronan Eng.*, 256 F.3d 995, 1001 (10th Cir. 2001), Plaintiffs have not sought plain-error review, so we do not undertake that analysis, *see Richison v. Ernest Group, Inc.,* 634 F.3d 1123, 1130–31 (10th Cir. 2011).

Plaintiffs try to justify their failure to object at trial by contending that the district court had already ruled that the evidence was to be presented to the jury at trial. They point to the court's statement at the spoliation hearing that it could not rule because it needed to "hear the evidence at trial." Aplt. App. at 234. But that is a strained interpretation of the court's statement, an interpretation that contradicts both the court's language ("I am reserving ruling on the Motion for Spoliation of Evidence," Aplt. App. at 234) and standard practice in litigation. If Plaintiffs wished to pursue at trial the exclusion of the Knoke evidence, they should have requested the court to forbid JetStream from presenting any such evidence until Plaintiffs had an opportunity to proffer evidence and argument (outside the presence of the jury) against admission. There can

7

be little doubt that what the district court was conveying at the pretrial hearing was that, before ruling on the request for exclusion of evidence of what amounted to JetStream's defense, it wanted to hear Plaintiffs' presentation of their case to better understand the context in which it would have to decide whether destruction of the materials was in bad faith or prejudiced Plaintiffs. This was a reasonable course for the court to take. There is no merit to the contention in Plaintiffs' appellate brief, undeveloped and without any citation to authority, that the district court abused its discretion in reserving decision on the spoliation motion.

Moreover, Plaintiffs waived this argument by discussing the Knoke list at length in their opening statement. *See United States v. Chavez*, 229 F.3d 946, 952 (10th Cir. 2000) ("It is widely recognized that a party who raises a subject in an opening statement 'opens the door' to admission of evidence on that same subject by the opposing party."); *see also Vehicle Mkt. Research, Inc. v. Mitchell Int'l., Inc.*, 839 F.3d 1251, 1257 (10th Cir. 2016) ("'Generally, a party introducing evidence cannot complain on appeal that the evidence was erroneously admitted.'" (quoting *Ohler v. United States,* 529 U.S. 753, 755 (2000))). Plaintiffs argue that this general rule does not apply to them, because "the court affirmatively told the parties that they *should* discuss the evidence." Aplt. Reply at 18. As previously noted, however, that is a distortion of the court's remarks.

### B. Adverse-Inference Instruction

As a general rule, "[s]poliation sanctions are proper when (1) a party has a duty to preserve evidence because it knew, or should have known, that litigation was imminent, and (2) the adverse party was prejudiced by the destruction of the evidence." *Turner*, 563

8

F.3d at 1149 (internal quotation marks omitted). The only sanction other than exclusion that was sought by Plaintiffs was that the district court give the jury an adverse-inference instruction.[4] They unsuccessfully tendered the following proposed instruction:

> In this case, you have heard testimony about a list of employee recommendations allegedly given to JetStream by AirServ in 2008. The court has previously found that JetStream intentionally lost or destroyed this list. Accordingly, you should infer that had the list been produced at trial for you, the contents of the list would have been unfavorable to JetStream and would have been favorable to the Plaintiffs. Specifically, you are to assume that the destroyed list of recommendations included recommendations that [the individual Plaintiffs] were good workers and that they should be hired by JetStream.

Aplt. App. at 184. The central debate between the parties on appeal is whether such an instruction is proper absent a court finding of bad faith by the party that possessed the records that were lost or destroyed.

There is some tension in precedents of this court. The more recent precedents insist on a finding of bad faith before giving an adverse-inference instruction. An earlier case, however, suggests that such a finding is unnecessary. We begin by discussing the more recent opinions. The reasoning in those opinions, supported by strongly persuasive authority, might one day convince this court, acting en banc, to overrule the earlier precedent. But it is unnecessary to resolve this matter now because, under the facts of this case, our earlier decision does not require an adverse-inference instruction.

---

[4] Although Plaintiffs contend on appeal that the district court was required to impose some sort of sanction, it had no obligation to impose a sanction not sought by a party. The only case cited by Plaintiffs in support of its contention, *103 Investors I, L.P. v. Square D Co.*, 470 F.3d 985, 988–89 (10th Cir. 2006), said only that the sanction imposed by the court in that case was appropriate.

In *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1401 (10th Cir. 1997), the plaintiff brought a Title VII discrimination claim challenging his firing. The employer contended that he was fired for excessive absenteeism. *See id.* at 1402. Portions of the plaintiff's attendance record, however, had been lost, and the plaintiff sought an adverse-inference instruction that the missing records would have been unfavorable to the company's contention. *See id.* at 1407. We held that the plaintiff was not entitled to an instruction because the evidence showed that the loss of the documents was inadvertent. We wrote: "The adverse inference must be predicated on the bad faith of the party destroying the records. Mere negligence in losing or destroying records is not enough because it does not support an inference of consciousness of a weak case." *Id.* (citations omitted).

We followed *Aramburu* in *Turner*. The plaintiff in *Turner*, 563 F.3d at 1140–42, brought a Title VII claim of gender discrimination after being denied employment. The employer defended its decision on the ground that her interviews had been scored lower than any of those hired. *See id*. But some of the notes of the interviewers had been lost. *See id*. at 1148–49. The plaintiff, just as Plaintiffs in this case, argued that the employer had violated 29 C.F.R. § 1602.14 and she was therefore entitled to an adverse-inference instruction. *See id*. We rejected the argument on the ground that there was no evidence of bad faith, saying, "[I]f the aggrieved party seeks an adverse inference to remedy the spoliation, it must also prove bad faith." *Id.* at 1149.

Our bad-faith requirement finds strong support in an explanation by the Advisory Committee to the Federal Rules of Civil Procedure for the same requirement in a virtually identical context. Fed. R. Civ. P. 37(e) governs the imposition of sanctions when

10

"electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery." Among the sanctions authorized by the rule are that the court may "(A) presume that the lost information was unfavorable to the party; [or] (B) instruct the jury that it may or must presume the information was unfavorable to the party." Fed. R. Civ. P. 37(e)(2). But those sanctions can be imposed "only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation." *Id.* The advisory committee note to this provision provides a commonsense explanation for the bad-faith requirement:

> Adverse-inference instructions were developed on the premise that a party's intentional loss or destruction of evidence to prevent its use in litigation gives rise to a reasonable inference that the evidence was unfavorable to the party responsible for loss or destruction of the evidence. Negligent or even grossly negligent behavior does not logically support that inference. Information lost through negligence may have been favorable to either party, including the party that lost it, and inferring that it was unfavorable to that party may tip the balance at trial in ways the lost information never would have.

Fed. R. Civ. P. 37 (Advisory Committee Note to Subdivision (e)(2) (2015 Amendment)). We see no reason why common sense should not also guide the imposition of an adverse-inference instruction for violation of § 1602.14. For the court to give an adverse-inference instruction when the violation of the regulation was not in bad faith "may tip the balance at trial in ways the lost information never would have." *Id.*

In this case, Plaintiffs conceded during closing argument at trial that the loss or destruction of the documents from the Knoke meeting was not in bad faith. *See* Aplee. App. at 1033 ("[W]e are not arguing that Ms. Cadorniga or Mr. Austin intentionally

11

destroyed these lists. They are lists from the supposed alleged meeting with Mr. Knoke. We are not alleging that they intentionally destroyed those to hurt the litigation. That is not what we are arguing."). Therefore, the court's failure to give an adverse-inference instruction was not an abuse of discretion.

Plaintiffs contend, however, that we are bound by our precedent in *Hicks v. Gates Rubber Co.*, 833 F.2d 1406, 1408 (10th Cir. 1987), which, of course, cannot be overruled by later panel decisions of this court, *see Green Sol. Retail, Inc v. United States*, 855 F.3d 1111, 1115 (10th Cir. 2017). Although *Hicks* did not concern a jury instruction, it strongly suggests that in any trial a violation of § 1602.14, even if not in bad faith, creates a presumption about which the factfinder should be informed. Nevertheless, as we proceed to explain, *Hicks* is distinguishable on the facts of this case, so we comply with the post-*Hicks* precedents of this court discussed above.

Ms. Hicks was a black female security guard who brought a suit under Title VII alleging that she was subjected to racial and sexual harassment and retaliatory discharge. *See Hicks*, 833 F.2d at 1408. In a bench trial the district court had granted judgment for the employer. We reversed in part and remanded for further proceedings. In the ruling relevant here, we held that the selective destruction of some of Ms. Hicks's personnel records violated 29 C.F.R. § 1602.14. *See id.* at 1418–19. And even though the evidence did not support a finding of bad faith in the destruction, *see id.* at 1419 n.5, we stated that because the employer "violated § 1602.14 by destroying the personnel records, Hicks is entitled to the benefit of a presumption that the destroyed documents would have

12

bolstered her case." *Id.* at 1419. The employer argued that the record rebutted the presumption, but we left that to be determined by the district court on remand. *See id.*

*Hicks* does not govern here for at least two reasons. First, Plaintiffs' proffered instruction did not permit the jury to decide that the evidence rebutted the presumption. Second, any presumption in this case was rebutted by the evidence at trial. Our opinion in *Hicks* does not address what quantum of evidence is necessary to rebut the presumption. We therefore turn to Fed. R. Evid. 301, which governs in the absence of a contrary command in a federal statute or the federal rules. It states:

> In a civil case, unless a federal statute or these rules provide otherwise, the party against whom a presumption is directed has the burden of producing evidence to rebut the presumption. But this rule does not shift the burden of persuasion, which remains on the party who had it originally.

*See Presbyterian/St. Luke's Med. Ctr. v. N.L.R.B.*, 653 F.2d 450, 456 (10th Cir. 1981) (holding that the National Labor Relations Board had acted contrary to Rule 301 by using a Board-created presumption to shift the burden of persuasion, rather than the burden of production). Under Rule 301, once the opposing party produces sufficient evidence to support a finding contrary to the presumed fact, the presumption disappears—that is, no jury instruction should mention it. *See Middleton v. Stephenson*, 749 F.3d 1197, 1200 (10th Cir. 2014) ("But that presumption is a rebuttable one, and the party seeking to rebut . . . the presumption need only *produce* sufficient evidence suggesting [the opposite of the presumed fact]; the party need not *prove* it. . . . And if a party successfully rebuts the presumption, it disappears from the case, leaving us at square one . . . ."); *Presbyterian/St. Luke's*, 653 F.2d at 455 ("In those presumptions [controlled by Fed.

13

R. Evid. 301], the presumption *disappears* upon introduction of evidence sufficient to sustain a finding of the nonexistence of the presumed fact." (internal quotation marks omitted)).[5]

Thus, the *Hicks* presumption required no more from JetStream than to produce evidence that the information destroyed was not favorable for Plaintiffs. And JetStream did so—Gail Cadorniga testified that she did not add anyone to the Knoke list, nor did she remove from the list any person he recommended. *See* Aplee. App. at 733. She further testified that the women in this case were not on the list because Knoke did not recommend them. *See id.* at 737–38. Given this evidence, proper application of Rule 301 required the district court to reject an instruction stating the *Hicks* presumption.

The district court did not abuse its discretion in rejecting Plaintiffs' requests for spoliation sanctions or denying the motion for new trial based on the failure to impose such sanctions.

### III. CONCLUSION

We **AFFIRM** the judgment of the district court.

---

[5] It may be helpful to point out that the advisory committee notes to Rule 301 can be misleading if not read carefully. The rule adopted by Congress is not the one submitted in the 1972 proposed rules, or even the rule proposed by the House of Representatives. Rather, it was the rule first set forth in a Senate amendment, which is discussed in the final paragraphs of the notes on the 1974 enactment.

14